UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MIGUEL A. RODRIGUEZ,
on behalf of himself and all others similarly situated,

        Plaintiff,

v.                                                          Civ. No.: 1:14-cv-1142-AJT-TRJ

EQUIFAX INFORMATION SERVICES LLC,

        Defendant.

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO AMEND HIS CLASS ACTION COMPLAINT**

Plaintiff, MIGUEL A. RODRIGUEZ, by counsel, files this reply memorandum and states as follows:

### I.     OVERVIEW

In opposing Plaintiff's Motion to Amend, Equifax ignores both the postural history of this case and Rule 15(a)'s liberal standard. It also ignores (or misstates) the substance of the proposed amendment.1

This case presents one class claim, Count I, which simply alleges, "Defendant Equifax's failure to timely provide the required FCRA notices to Plaintiff Rodriguez and the putative class members violated 15 U.S.C. § 1681k(a)(l)." (Docket No. 1, ¶34). *See generally Williams v.*

---

1 Equifax also intersperses its response with claims such as, "These facts confirm that Plaintiff has no viable claim for a willful violation of § 1681k, and that this case is not suitable for class adjudication." (Docket No. 59, 2). This boast will likely seem remarkable to the Court after it receives the facts and legal argument on summary judgment and class certification. Plaintiff addresses Equifax's futility argument below, but as to the remainder of Defendant's claim of having a real defense, Mr. Rodriguez will establish otherwise at the proper posture.

*LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463, at *1 (E.D. Va. Aug. 23, 2007) ("Section 1681k of the FCRA requires that, when a consumer reporting agency ("CRA") furnishes a report to a customer regarding a consumer, and the report contains information on the public record that is 'likely to have an adverse effect' upon a consumer's ability to obtain employment, the CRA must 'notify' the consumer 'at the time' it furnishes the report to the prospective employer. 15 U.S.C. § 1681k(a)(1)."). Defendant's lead management witness testified, "We, as Equifax, had to send the letter because it's the law." (Deposition of Jutta Rivera, 15:6-7)2. Notwithstanding that acknowledgment, the same witness confessed that these consumer notices "are never sent to consumers at the time that the credit reports are furnished to OPM." (*Id.*, 25:5-11). In fact, Defendant's primary employee witness – the person who actually stuffs the notices into envelopes – testified that she has no knowledge as to whether the notices she stuffs on a particular day are connected to the credit reports from the previous day or night or otherwise. She merely takes a stack, stuffs a set of notices into envelopes and takes them to an intra-company mail cubicle near her office. (Deposition of Trudie Ambrose, *in passim*.) Equifax clearly violated 15 U.S.C. § 1681k(a)(1). However, that is not where the dispute in the case really rests.

Lacking any defense, Equifax has instead bet the house on its impending opposition to class certification. As is obvious from its brief opposing the motion to amend, Defendant's strategy is to argue that since it cannot tell from any record, policy or testimony when its notice letters were printed or mailed relative to the triggering employment credit reports, neither can the Plaintiff and thus a class cannot be identified. *See e.g.* Docket No. 59, at 2. ("Equifax did not mail the notices itself, but instead engaged a third-party vendor to send the notices; Equifax did not keep

---

2 Much of the discovery and deposition testimony produced in this case is designated as "Confidential." Rather than burden the Court with (likely unsupportable) motions to file these under seal, Plaintiff will appear at the hearing with the cited documents or transcripts in the event Equifax actually disputes the citations made herein.

2

records (or require its vendor to keep records) reflecting the dates on which the notices were mailed.")

Contrary to Defendant's assertion, the evidence will show that it was **not** "Equifax's practice [] in general, to send notices to consumers whose reports it provided to OPM on the same business day it sent reports to OPM." (*Id.*) Still, the day of mailing itself is not the legal standard. Instead, the question is whether the notices were mailed "at the time" Equifax furnished its credit reports to the third party customer. 15 U.S.C. § 1681k(a)(1).

The proposed Amended Complaint alleges this same claim. The amendment would make only four changes, none a divergence from the case to date. First, the class definition will be narrowed to include only Equifax's notice obligations triggered by OPM and Department of Homeland Security credit reports rather than reports sold to every customer user. Second, the class definition would use the phrase from the statute ("at the time") instead of "the same day" in order to address Equifax's academic and litigation construction of its inability (or refusal) to identify the day on which it prints and mails its notice letters. Third, the amended complaint proffers requested sub-classes that the Court could consider in deciding whether to certify a class. Finally, Plaintiff adds another example of an Equifax credit report and notice sent to the named Plaintiff.3

**II. THE AMENDED COMPLAINT IS NOT UNFAIRLY PREJUDICIAL TO EQUIFAX AND IS NOT SOUGHT IN BAD FAITH**

Defendant opposes Plaintiff's motion because it would purportedly "result in undue delay and prejudice to Equifax." (Docket No. 59, 5-8).

The Court of course is long familiar with both the text of Federal Rule 15(a)(2) ("The court should freely give leave when justice so requires.") and its recital by the Fourth Circuit. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir.2006) (*en banc*) (citing *Johnson v. Oroweat Foods Co.*, 785

---

3 The FCRA provides for only one statutory damage recover "per consumer". *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 272 (4th Cir. 2010). The allegation of multiple or additional violation by Equifax thus cannot change the structure, nature or basis for the Count I claim.

F.2d 503, 509 (4th Cir.1986)). The Fourth Circuit has interpreted Rule 15(a) such that "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Id*. Leave should be granted unless Equifax can establish one of these three obstacles – prejudice, Plaintiff's bad faith or futility. There is nothing about this proposed amendment that comes close to meeting these heavy thresholds for denial.

      **A.**      **Defendant Cannot and Does Not Allege that the Motion is Made in Bad Faith.**

First, Equifax asserts that the amendment is unduly delayed because the motion was filed days after the close of discovery. (Docket No. 59, 6). But delay in isolation is not a Rule 15(a) factor. *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) ("Delay alone, however, is an insufficient reason to deny the plaintiff's motion to amend. *See* Davis, 615 F.2d at 613.").4 "Rather, the delay must be accompanied by prejudice, bad faith, or futility." *Earl v. Norfolk State Univ.*, No. 2:13CV148, 2014 WL 583972, at *5 (E.D. Va. Feb. 13, 2014). Equifax does not (and could not ) allege bad faith and its opposition of course never even mentions the phrase.

Even Defendant's suggestion of undue delay is improper. Trial remains months away and was set with the agreement of Defendant while the present motion was pending. Neither class certification nor summary judgment motions practice has begun. And as explained more fully *infra*, Plaintiff informed Equifax of the intended amendment of the class definition and the applicability of the "Homeland Security" report long before discovery was closed. Further, none of the proffered amended text or allegations change the nature of the case or claim or surprised the Defendant.

---

4 Equifax relies on a much earlier Court of Appeals decision, *Deasy v. Hill*, 833 F.3d 38, 40 (4th Cir. 1987), to articulate its Rule 15(a) standard. The difference is that *Deasy* used the phrase "undue delay" as a putative bar to amendment, a formulation that is less often articulated than the now established standard from *Laber*.

But likely the best reason the Court should reject Equifax's claim of dilatory of bad faith delay by Plaintiff is the actual history in the case, and in particular - Equifax's own misconduct and shifting positions. The District Court has been spared much of the direct problems caused by Equifax's discovery and defense positions taken in the case, but the same is not true for the Plaintiff or the Magistrate Judge. *See e.g.* Docket Nos. 16-37. Basically, Plaintiff served written discovery on November 17, 2014, shortly after the Rule 26(f) conference. Equifax provided formal responses on January 5, 2015. On the key issue in the case, Plaintiff asked and Equifax responded as follows:

> **INTERROGATORY NO. 1:** Please state in full detail your procedures for sending out **any** notices pursuant to 15 U.S.C. § 1681k(a)(1), including the names and titles of the employees, persons and/or identities of any third parties involved in the process.
>
> **RESPONSE:** Subject to its General and Specific Objections, Equifax states that it refers to consumer reports requested for employment purposes as "PERSONA" reports. A third party may request a PERSONA report if it has a subscriber agreement with Equifax wherein it has agreed to comply with the requirements of the Fair Credit Reporting Act ("FCRA"). The third party requests a PERSONA report by providing the identifying information concerning the consumer/applicant as well as a code PB3 or PB4 with its request. These codes indicate that a PERSONA report is being requested for employment purposes. If a PERSONA report is issued that contains the type of public record item described in section 1681k(a)(1) of the FCRA, then Equifax mails the consumer the notice required by section 1681k(a)(1) of the Act. **The notices are mailed, at the latest, the next business day following the issuance of the PERSONA by Equifax's mailroom vendor. Equifax's employee,** Ladeamya Mixon, 1550 Peachtree Street, Atlanta, Georgia, is knowledgeable about this process. Ms. Mixon may be contacted through Equifax's counsel. (emphasis added)

After a meet and confer conference, on February 2, 2015, Equifax amended its discovery response to state:

> **Since May 2013, Equifax and OPM have used this PERSONA process for sending notices to consumers whose consumer reports were requested by the United States Office of Personnel Management ("OPM") and contained a public record item. Before May 2013,**

5

> **Equifax had a different procedure for sending these notices. Before May 2013, when OPM requested consumer reports that contained public record items, Equifax automatically extracted the name and address of consumers, notified the consumers that it was reporting public record information about them, and provided OPM's name and address, in addition to the name, address and phone numbers of each credit reporting agency. In most instances, Equifax sent the notices to the consumers the same business day it provided the reports to OPM. In some unusual circumstances, Equifax sent the notices the following business day. Equifax's employee, Jutta Rivera, is knowledgeable about this process**. Ms. Rivera may be contacted through Equifax's counsel. Equifax has also produced documents reflecting this policy and practice. (emphasis added)

On February 6, 2015, Plaintiff filed his first motion to compel discovery responses. Dkt. No. 16. In this same period, Plaintiff deposed Equifax's management witness who explained in detail what Defendant was then representing as its process for sending the required § 1681k(a)(1) notices. Deposition of Margaret Leslie.

However, it turns out that none of these varied explanations of Defendant's § 1681k(a)(1) procedures was correct. For the third time in this case, Equifax's counsel offered a new explanation as to the process it was to contend was followed to comply with 15 U.S.C. § 1681k(a)(1). As a result, by consent and for the claimed purpose of obtaining more time to gather and produce the documents and witnesses to support its new defense theory, Equifax filed a consent motion seeking to extend certain deadlines and acknowledged that the delay was caused by its own shifting positions and discovery responses or testimony. Docket. No. 20. In that motion, Equifax conceded that certain information produced during discovery was false (discovery in this case began on October 20, 2014). More specifically Equifax stated as follows:

> Over the course of responding to Plaintiff's discovery and preparing witnesses for depositions, the understanding of Equifax's counsel has developed and the Defendant's discovery responses have required several supplementations and corrections. When Equifax first responded to Plaintiff's discovery requests, Defendant understood the procedure for the sending of the subject notices to be different than was later learned by its counsel. That understanding first conveyed to Plaintiff based on a good-

6

> faith understanding of the facts was ultimately incorrect. Thereafter, before the filing of the Plaintiff's pending motions, Defendant provided a different explanation for this process. Thereafter, Plaintiff completed the deposition of Equifax's disclosed management witness, Margaret Leslie, and a further explanation was provided to Plaintiff's counsel, again based on Defendant's good faith understanding of the relevant facts. After that deposition, Plaintiff filed the pending motions.
>
> In preparation for a deposition (scheduled for February 10, 2015) of a frontline Equifax employee witness that Defendant's counsel understood actually supervised and sent the FCRA notices, Defendant's counsel discovered additional documents relevant to this case including the actual consumer report furnished regarding the Plaintiff and the form notice letter Equifax sent to consumers.5 That was provided to Plaintiff's counsel after the filing of the pending motions. In addition, in the preparation of the witness, Defendant's counsel learned that the actual procedure for sending the FCRA notice was significantly different than had previously been stated in Defendant's discovery answers and deposition testimony. Defendant's counsel also learned that the subject notices were actually mailed by a previously undisclosed third party.
>
> Immediately upon learning of this needed correction and supplementation, Equifax's counsel contacted Plaintiff's counsel and disclosed this new information. However, the Parties both agree that Plaintiff could be substantively prejudiced by the new disclosures, documents and information in light of the approaching discovery deadline.

*Id.* at 2-3. Between February 11, 2015 and February 19, 2015, counsel for Plaintiff and Defendant had telephone conferences with Magistrate Judge Jones. As a result of Equifax's above representations, Judge Jones entered an order extending discovery deadlines.

On Friday February 27, 2015, Plaintiff deposed Jutta Rivera and Trudie Ambrose, Equifax employees with the most involvement in the day-to-day production of the relevant OPM credit reports and related FCRA notices. During the depositions, Ms. Rivera and Ms. Ambrose identified a trove of specific documents and information that Equifax had withheld. Plaintiff was forced to file another motion to compel discovery Dkt. No. 30 seeking the above categories of documents and information. A formal hearing was held on March 12, 2015. Magistrate Judge Jones presided

---

5 Plaintiff asks the Court to note that in its filing – at that point Equifax concedes that it had proffered FOUR different stories as to when and how it made its required disclosures.

over the hearing. At that hearing, the Court ordered Equifax to again amend its discovery responses and to produce a number of categories of critical documents, including two full months of employment reports for class members, two full months of corresponding § 1681k(a)(1) notice letters and all policies, procedures or communications regarding Equifax's compliance with § 1681k.

Between March 19, 2015 and April 2, 2015, Equifax served its second supplemented response to Interrogatory 1 and a substantial number of additional documents.[6] Plaintiff received and reviewed the sample months of report and disclosure files to confirm the uniformity of the violations alleged. Then at the hearing upon Plaintiff's renewed motion for Rule 37(c)(1) sanction, Equifax represented on the record that it possessed no written procedures, compliance reviews, proof of printing or mailing of notices or anything else regarding its § 1681k(a)(1) duties. Plaintiff certainly accepted that stipulation and with that understanding the motion was denied.

Given the substantial positional and factual shifting by Equifax, Plaintiff's motion cannot be fairly characterized as in bad faith or improperly delayed. Equifax's suggestion that Plaintiff engaged in dilatory misconduct (because it should have formally moved to amend in light of all that was only belatedly revealed by Equifax) is ridiculous in this context. Defendant's own position is that it only recently learned of its own notice process. In fact, on page 1 of its opposition brief, Defendant claims, "**The evidence adduced over the last several months** conclusively demonstrates that Plaintiff cannot prove, using common evidence, that Equifax

---

6 Per the Court's March 12, 2015 order, Equifax was supposed to produce certain documents on or before March 19, 2015. Exhibit 5 at 69:23-25,70:1-4. Equifax failed to do so. Equifax's production was on a rolling basis. It was not until late Friday April 3, 2015 that Equifax concluded its production, which was approximately 50,000 pages. As Plaintiff, reviewed the 50,000 pages of documents Plaintiff discovered that there were additional compliance documents that were not produced. However, at the April 16, 2014 hearing Equifax, by counsel, represented to the court that these compliance documents no longer existed and that Equifax does not have any other documents concerning 1681k anywhere in Equifax's vast files.

willfully failed to send notices under § 1681k to consumers about whom it sent reports to OPM." (Emphasis added).

Plaintiff's filing of the motion to amend is also not dilatory or in bad faith because it does not spring a surprise on Equifax, nor does it confront the Defendant with anything new. As developed more fully in the next section, Equifax received the class definition and draft amended complaint on March 13, 2015. Prior to that, the Parties had already been litigating the case as if under the amended definition. Plaintiff answered questions in discovery and Equifax examined Mr. Rodriguez in his deposition as if the present class definition and factual allegations were as Plaintiff seeks to formalize in the amended complaint.

There was no bad faith delay in filing the present motion.

  **B.  The Amended Complain is not Unfairly Prejudicial.**

While Equifax tries to separate its opposition to the proposed amendment into two categories of dispute – undue delay and prejudice, in reality the arguments Defendant makes for each is really the same – prejudice. Equifax claims that the amended complaint would deny it of the opportunity to conduct relevant discovery because it would introduce a new theory to the case. Neither Defendant's legal nor its factual claims are tenable.

Within roughly a page of its brief, Equifax quickly theorizes a basis to believe it would suffer unfair prejudice. First, Defendant argues:

> If Equifax had known that Plaintiff's real theory (as opposed to the one he pled in the complaint and advanced throughout discovery) was that the FCRA required it to send 1681k notices simultaneously with consumer reports, it may have litigated the case differently. Equifax has already deposed Plaintiff and served written discovery directed at the claims as plead in the original complaint. Likewise, if Equifax had known that Plaintiff intended to assert a claim based on the January 2014 notice letter - *which Plaintiff produced to Equifax* - it may have litigated this case differently. If Plaintiff is permitted leave to amend, Equifax may need to re-depose Plaintiff after another round of written discovery directed to the new, expanded claims.

Docket No. 59, 7. Given the professionalism and gentile tone demanded of litigants in our District, the most that Plaintiff can say is that this claim is simply untrue. Through the entire case – from the first discovery request, discovery response or deposition – the case has been litigated upon the basis that Equifax violated § 1681k(a)((1) by not sending the notice "at the time." For example, this is obvious in the deposition transcripts of Equifax's employee witnesses cited above. And it was a basis for motions practice and argument before Judge Jones in discovery. Further, Defendant's claim of surprise at Plaintiff's allegation that Equifax violates the FCRA when it does not send the notices "at the time" it furnishes the related credit report is belied by the actual text of the statute – which demands exactly that – AND by the existing allegation of the FCRA violation itself in the existing Complaint. *See e.g*. Docket No. 1, ¶ 2 ("Defendant Equifax also failed to provide Plaintiff Rodriguez and other similarly situated consumers with timely and lawful notice that it was furnishing an employment-purposed-consumer report at the time that it did so. This important requirement is intended to provide consumers immediate notice of the furnishing of the employment report and details necessary to preemptively contact the reporting agency to obtain and, as appropriate, correct information in the furnished report.")

In fact, not only has Equifax known of its need to consider discovery related to the Plaintiff's multiple Equifax credit reports or the "at the time" allegation, but in fact Equifax has already taken and accomplished that discovery. For example, when Defendant argues, "Equifax may need to re-depose Plaintiff after another round of written discovery directed to the new, expanded claims", it withholds from the Court the fact that it extensively – comprehensively – deposed Mr. Rodriguez as to all of his Equifax (and other) credit reports including the Homeland Security report of which allegation it now claims surprise. Deposition of Miguel Rodriguez, January 20, 2015, 193:9 – 207:17.

Additionally, all of the evidence about which Equifax claims it may have wanted to

discover is fully and solely within its possession and control. What additional evidence would Equifax try and obtain? Evidence regarding the delay it permits in printing its notice letters? The delay in mailing these letters? Not only is there nothing different between the litigation and discovery of these questions with a class definition that says "not at the time" versus "not the same day", but if there were Equifax is the party – the only party – with such evidence. Defendant's theoretical position that it may have sought to obtain additional evidence regarding its §1681k(a)(1) timing and process is particularly ironic given the position it dispositively took on the record before Judge Jones in defending the Plaintiff's recent Rule 37(c)(1) motion for sanctions. Docket No. 56. On the record, Equifax's counsel represented to the Court that it had produced every document in Defendant's position regarding its §1681k(a)(1) compliance – not merely as to its OPM reports. By Defendant's account, it has already obtained all of the evidence otherwise available to it.

Additionally, Equifax asked for the revised class definition before discovery had closed, and Plaintiff was ordered to and did provide it – twice. Once in response to Judge Jones' request to do so on the records and a second time in accordance with Judge Jones' order, the next day in writing:

> THE COURT: While you're there, my next, and I think last, preliminary question is this: As of today, what group do you say is the putative class?
>
> MR. BENNETT: The putative class that we would seek to certify as of today, …, will consist of four subclasses of a single class.
>
> The class will be individuals about whom Equifax furnished a consumer report from September 2012 to July 2014 containing a derogatory public record when it did not provide at the time a notice as required by 1681k. 1681k's notice requires the entity that's delivering the report to OPM or furnishing the report to state that it is doing so and to identify OPM. The reason why there will be four subclasses:
>
> First, our client could represent all because he was subject to two different OPM applications, both rejected with his -- or in both circumstances he had problems because of inaccurate information, but the first would be for the pre-May 2013 period. September of 2012 to May of 2013.

11

After that point, Equifax then changed the method through which it would send the notice letters. A different method, but it still never sent them at the time. We know that for the second group because our client's letter was actually dated two days. He had that letter. It was dated two days after the inquiries in his file.

THE COURT: This is the second of your client's two experiences?

MR. BENNETT: Yes, sir.

THE COURT: All right.

MR. BENNETT: And then the other --

THE COURT: Wait a minute. So that makes the second subclass what group of people?

MR. BENNETT: Individuals from, I believe it's May of 2013 through July of 2014 when the letter process changed again, and we don't have evidence or a representative for that process.

THE COURT: Okay. What is the third subclass?

MR. BENNETT: The third permutation would be individuals that received the first letter. The form letter Equifax has already testified that it uniformly sent did not identify that Equifax was the furnisher. It used some OPM coding. Nor did it state that any particular consumer reporting agency was definitively the source of the derogatory public record. So it's based on the contents of the form letter that was used until May of '13.

THE COURT: So it's individuals who actually received the pre-May '13 letter?

MR. BENNETT: Yes, sir. And the fourth permutation is based on the contents of the second of Mr. Rodriguez's letters. That letter did not identify an end user. It didn't identify OPM. It was blank.

THE COURT: All right, sir. Subclasses three and four are individuals who received defective letters in your view, but if I'm understanding you correctly, the alleged violation as to subclasses three and four is the text of the letter and not the timing of the letter.

MR. BENNETT: Yes, sir. The violation is the same, which is that Equifax did not send a letter notifying the consumers in the manner required at the time it furnished the report.

12

>THE COURT: I think we're talking around each other.
>
>MR. BENNETT: Yes, sir.
>
>THE COURT: Working backward, as to subclasses three and four, is the alleged violation text or timing or both?
>
>MR. BENNETT: Text.
>
>THE COURT: Text. That's what I thought. As to subclasses one and two, is the alleged violation text or timing or both?
>
>MR. BENNETT: It's timing, Your Honor.
>
>THE COURT: That's what I thought. Okay. All right. Which two subclasses do you say your client can represent?
>
>MR. BENNETT: All four of them. Exhibit 5 at 14-17

The next day, on March 13, 2015, per the Court's instructions, Plaintiff provided the amended class definitions in writing as well as a proposed amended complaint that is almost identical to the amended complaint for which leave is now sought.

>The putative class definition currently states,
>
>All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report furnished to a third party, (b) that was furnished for an employment purpose, (c) that contained at least one record of a criminal conviction or arrest, civil lien, bankruptcy or civil judgment, (d) on or after September 5,2012, and (e) to whom Defendant Equifax did not place in the United States mail postage pre-paid, on the day they furnished any part of the report, a written notice that they were furnishing the subject report and containing the name of the person that was to receive the report.

Docket No. 1, ¶ 24. There is currently not a limitation as to the identity of the end-user customer to whom Equifax furnished a consumer report. The new class definition does narrow the subject reports to only those Equifax furnished to either OPM of the Department of Homeland Security. Accordingly, given the breadth of the pled legal violation (Docket No. 1, ¶34) and of the current class definition (*Id*., ¶ 24), Mr. Rodriguez is already included in the class definition as pled for

13

both his OPM report and his Homeland Security report. Thus none of the amended text materially alters the claim or the joining of the dispute.

Finally, Defendant's complaint that the Plaintiff should not be permitted to change the class definition is itself procedurally naive. Class definitions matter, but in a different way than conventional legal theories or claims. It is rare that a proposed class definition that is proffered by a moving plaintiff remains unchanged through the Rule 23 process. *See e,g*, *Williams v. LexisNexis Risk Mgmt. Inc.*, Civ. No. 3:06cv241, 2007 WL 2439463, at *8 (E.D. Va. Aug. 23, 2007) ("Therefore, the § 1681i class must be defined to include only those individuals for whom LexisNexis refused to conduct an investigation until the consumer provided two forms of identification. The issues in such a class would be focused on whether LexisNexis violated the law when it implemented that standard policy. So limited, issues common to the class clearly predominate over issues unique to individual members of the class. The § 1681i class will be so defined in the forthcoming class certification order."); *Cappetta v. GC Services LP*, Civ. No. 3:08cv288, Dkt. No. 225 (E.D.Va. Nov. 12, 2009) (Modifying a FCRA class definition to include only Virginia consumers); *Soutter v. Equifax Information Services, LLC*, 3:10cv107-REP, Dkt. No. 224 (E.D.Va., Apr. 15, 2015) (Certifying a FCRA class on remand with a new class definition); *Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2014 WL 5529731 (E.D. Va. Oct. 31, 2014) (Narrowing FCRA class definition to limit the time period to 2 years). Fed. R. Civ. P. 23(c)(1)(C) gives District Courts broad discretion to modify the class definition until there is a decision on the merits. *See* 2 H. Newberg and A. Conte, *Newberg on Class Actions* § 6.14 (4th ed. 2006) and cases collected therein ("broad discretion [under Rule 23] to modify the definition of the class even after certification.")

### III. THE AMENDMENT IS NOT FUTILE.

Defendant concedes that for the purposes of this motion, the proposed class generally is not

subject to its futility argument, nor are the suggested first and third subclasses. Docket No. 59, 8-9, n.3. Equifax however does challenge the sustainability of the second and fourth proposed subclasses.

First, the subclasses themselves are not at issue. It is the actual class definition itself that governs and is truly at issue. The pleading of four putative subclasses is intended to permit the explanation of the Class and as a fallback against procedural attacks by Defendant under Rule 23. For example, if Equifax establishes that there is a material difference between consumers who were the subject of 2012 §1681k(a)(1) notices and those who were the subject of such notices in 2013 – for example if Equifax convinces the Court that the working or mailing procedure for one notice was materially (as opposed to superficially) different – then the Court could chose to certify a smaller class or it could define two subclasses. But of course, it could already do that with or without the inclusion of subclass suggestions in a complaint.

As the leading class action treatise explains, such "permissive subclasses" are merely a case management tool for the Court's use. In circumstances like in this case, the named Plaintiff need not satisfy all of the Rule 23 elements for each subclass:

> Subclassing is not necessary but is permitted to assist a court in managing complex litigation in a variety of circumstances in which subclasses would promote efficiency. Rule 23(d)—which grants a court significant leeway in managing a class suit[8]—governs permissive subclassing. Because there is no conflict of interest at issue, there is no necessity that each subclass have different representation and independently comply with all of the requirements of Rule 23(a), (b), and (g), and hence, Rule 23(c)(5) is inapplicable.

Newberg on Class Actions (5th ed.) § 7:29 Subclasses—Overview of types. Defendant's academic challenge to the Plaintiff's own facts as they apply to sub-classes two and four are properly reserved for a Rule 23 opposition, or a summary judgment motion. Regardless of what Equifax may think of any subclass alternatives suggested to the Court, the Class itself is unchallenged. The proposed Amended Complaint is not futile.

## IV. CONCLUSION

For the reasons stated herein, the Court should grant Plaintiff's motion for leave to amend his Class Action Complaint.

                                      MIGUEL A. RODRIGUEZ *on behalf of himself and all others similarly situated*

                                      By:    */s/ Leonard A. Bennett*
                                                            Counsel

Leonard Anthony Bennett, Esq.
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com

### Certificate of Service

I hereby certify that on April 23, 2015, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the counsel who appear in the CM/ECF system:

                                                          */s/*
                                       Leonard Anthony Bennett, Esq.
                                       Consumer Litigation Associates
                                       763 J Clyde Morris Boulevard, Suite 1A
                                       Newport News, VA 23601
                                       757-930-3660
                                       Fax: 757-930-3662
                                       Email: lenbennett@clalegal.com