IN THE UNITED STATES DISTRICT COURT FOR
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MIGUEL A. RODRIGUEZ, *on behalf of himself and all others similarly situated*, Plaintiffs, v. EQUIFAX INFORMATION SERVICES, LLC, Defendant. | Civil Action No. 1:14-cv-01142 (AJT/TRJ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

Plaintiff, MIGUEL A. RODRIGUEZ, for himself and on behalf of all other similarly situated individuals, by counsel, files this Memorandum in Support of his Motion for Class Certification and states as follows:

I.    **OVERVIEW**

Mr. Rodriguez brings a class claim under the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681k(a)(1) against Equifax Information Services, LLC ("Equifax") for its sale and furnishing of employment-purposed consumer reports that contain civil public records (likely to have an adverse effect on a consumers ability to obtain employment) from a private database without compliance with the mandatory notice requirements required therein. *See Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463, at *1 (E.D. Va. Aug. 23, 2007) (Section 1681k of the FCRA requires that, when a consumer reporting agency ("CRA") furnishes a report to a customer regarding a consumer, and the report contains information on the public record that is 'likely to have an adverse effect' upon a consumer's ability to obtain

employment, the CRA must 'notify' the consumer 'at the time' it furnishes the report to the prospective employer. 15 U.S.C. § 1681k(a)(1).").

Equifax sold adverse civil public records for an employment purpose. Equifax is required to send consumers a written notice under 15 U.S.C. § 1681k(a)(1) "at the time" it furnishes the subject report.  However, it fails to do so. This employment-purpose provision requiring minimal notice to the consumer that his or her employment is contingent upon a background check from an otherwise unknown consumer reporting agency was at the heart of the enactment of the FCRA.[1]

At no time during the class period - September 5, 2012 through July 17, 2014 - did Equifax provide a compliant notice, nor did it engage in any other meaningful compliance with the section. During this period, Equifax sent purported § 1681k(a)(1) notices that wholly failed to identify itself as the consumer reporting agency reporting the report and wholly failed to identify the person (the employer or "user") to whom such report had been furnished; that space was blank.  Finally, in no circumstance did Equifax follow an integrated or contemporaneous process to provide such notices "at the time" it furnished class member credit reports. Its misconduct is uniform and unvaried; it is the same for every class member.  Thus, Rule 23(b)(3) certification is appropriate.

## II.    STATEMENT OF FACTS AND PROPOSED CLASS CLAIM

### A.    Plaintiff's Class Claims Are Brought Under 15 U.S.C. § 1681k(a)(1).

Section 1681k(a) provides, in pertinent part:

---

1. This case is virtually the same as those successfully prosecuted against Equifax's industry competitors.  *Williams v. LexisNexis Risk Mgmt. Inc.*, CIV A 3:06-cv-241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) (LexisNexis); *Beverly v. Wal-Mart Stores. Inc*., CIV A 3:07-cv-00469-RLW (E.D. Va. May 1, 2009)(ChoicePoint); *Ryals v. Hireright Solutions, Inc*. CIV A 3:09-cv-625-JAG (E.D. Va. Dec. 21, 2011) (HireRight); *Tyrone Henderson v. Verifications, Inc*., (E.D. Va.), Civil Action No: 3:11-cv-514-REP (Verifications)*; Henderson v. Axciom*, (E.D. Va.), Civil Action No.  3:12-cv-589 (Axciom and Sterling); *Jane Roe, et al. v. Intellicorp Records, Inc., et al.* (N.D. OH), Civil Action No: 1:12-cv-02288 (Intellicorp); *Thomas v. Backgroundchecks.com*  (E.D. Va.), Civil Action No: 3:13-cv-029 (Backgroundchecks.com); *Henderson, et al v. AlliedBarton Security Services LLC, d/b/a HR Plus* (E.D. Va.), Civil Action No. 3:14-cv-82 (H.R.Plus).

> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—
>
> (1) *at the time* such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported *by the consumer reporting agency, together with the name and address of the person to whom such information is being reported*; or
>
> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

*Id.* (emphasis added).[2]  Plaintiff asserts this claim on the basis of a nationwide class of consumers about whom Equifax furnished a credit report to OPM.  Equifax's position acknowledges that it is required by law to send the § 1681k(a)(1) notice. EXHIBIT 1, J. Rivera Depo. Tr.  10:12-11; 15:6-7.  And in fact Defendant takes the position that it does send a § 1681k(a)(1) notice as its means of compliance.  *Id.* and EXHIBIT 2, Equifax's Amended and Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories at No. 1.

In considering the class claim in this case, several components of § 1681k(a)(1) text are particularly important.  First, the "consumer reporting agency which furnishes a consumer report for employment purposes" must "notify the consumer of the fact that public record information is being reported by the consumer reporting agency[.]"  15 U.S.C. § 1681k(a)(1).  Thus, the CRA

---

2. Equifax has not produced any "heightened" procedures in place and designed to strictly ensure that it only sells complete public records – it obtains partial records and selective data from third party vendors.  It has not identified any witness to testify to the same.  Nor does it contend that it had in place heightened procedures to re-check or contemporaneously verify them before issuing an employment report. To satisfy this second option, "The CRA must at least re-verify information that was collected prior to the current request for a consumer report for employment purposes to ensure that the status has not changed."  National Consumer Law Center, *Fair Credit Reporting*, Sixth Edition (2006), p.126; *see also Poole v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557 (E.D. Ky. 2006).  "Relying upon database records updated every thirty days does not suffice."  *Fair Credit Reporting*, p. 125-126.  *See also* Allan, FTC Informal Staff Opinion Letter (May 5, 1999). For similar reasons, in Williams, Judge Payne found "that section of § 1681k is not at issue in this litigation[.]" *Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463, at *1, n.2 (E.D. Va. Aug. 23, 2007); see also [Dkt. No. 64 at ¶ 17].

that actually furnishes the report – Equifax – must notify the consumer that that particular CRA is the reporting entity.  Equifax must notify the consumer that Equifax has furnished a report. This might seem self-evident or simple enough, but the Equifax form letter did neither of these things. It did not notify the consumer that Equifax was the sender of the notice nor did it state that Equifax was the CRA that furnished the report.  EXHIBIT 3, Equifax Form 1681k(a)(1) Notice. Second, to be compliant, the notice must include "the name and address of the person to whom such information is being reported." 15 U.S.C. § 1681k(a)(1).  Equifax left the "to whom such information is being reported" field blank.  EXHIBIT 4, Equifax PERSONA Form 1681k(a)(1) Notice.

Finally, Equifax must send its § 1681k(a)(1) notification "at the time such public record information is reported to the user of such consumer report[.]" 15 U.S.C. § 1681k(a)(1).  This language – "at the time" – gives the Court some pause.  But the difficulty is not the clarity of the statutory requirement.  Instead, it is the perceived impracticality of the requirement.  If "at the time" has its ordinary meaning, it means on or just before, if not simultaneously with the related event.[3] When the FCRA uses the phrase "at the time", it is apparent that it is intended to fix the triggering event as the exact moment for or before the required act.  In the very section at issue, §1681k, the FCRA states:

> For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item **at the time of the report** is reported.

15 U.S.C. §1681k(a)(2) (emphasis added).  The section would make no sense if the phrase "at the time" were interpreted to mean at a different and later point.  Similarly, 15 U.S.C. § 1681g, which

---

3. For example, the idiom "at the same time" is taken to mean "at one time; together." Oxford Advanced Learner's Dictionary, Definition of Time (Noun), http://www.oxfordlearnersdictionaries.com/us/definition/english/time_1 last visited April 30, 2015.

fixes a consumer's right to receive a disclosure of "all information in the consumer's file at the time of the request[.]"  15 U.S.C. §1681g(a)(1).  Equifax's expected interpretation would permit the CRA to delete or modify data in the consumer's file when it received the dispute and then send a copy of the altered file thereafter.  This as well would make little sense within the otherwise coherent FCRA framework.

Still, as will be detailed in a response to any later summary judgment motion, whether or not "at the time" means at the exact same moment is a purely academic question that need not be resolved or answered in this action.  Rather, there is no dispute that Equifax's process for creating, printing, delivering to a vendor and then having that vendor mail the notices is a process that itself is wholly apart from and after the process for generating and furnishing credit reports to the employer.  Further, every bit of direct evidence in the case, as well as all credible circumstantial evidence supports the allegation that the notices are never sent the same day as the report is furnished.  In fact, Equifax has not produced a single notice, envelope, printer record, mail receipt or other document to show that even one such notice was sent the same day of the report.

Plaintiff alleges that he and each member of the putative class are entitled to statutory damages at or between $100 and $1,000, and punitive damages because the violation alleged in the case was willfully committed by Equifax.  154 U.S.C. § 1681n.  See also *Dreher v. Experian Info. Solutions, Inc.*, No. 3:11-CV-624, 2014 WL 6834867, at *4 (E.D. Va. Dec. 3, 2014)("In *Safeco Insurance Company v. Burr*, 551 U.S. 47, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007), the Supreme Court held that willful violations of the Act included not only knowing and intentional violations but also reckless violations. *Id.* at 59–60, 127 S.Ct. 2201. [...]. The Court subsequently characterized recklessness by way of the common law: 'action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'' *Id.* at 68, 127 S.Ct. 2201 (quoting *Farmer v. Brennan,* 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

Accordingly, a company recklessly violates the Act when its interpretation is 'objectively unreasonable.' *Id.* at 70, 127 S.Ct. 2201.")

## B.     Equifax's Uniform Process and Procedures

Equifax maintains a uniform automated process for preparing employment-purposed consumer reports and 1681k(a)(1) notices. EXHIBIT 5, M. Leslie Depo. Tr. 69:23-25, 70, 71:1-5. Equifax and OPM have computer systems that communicate directly with one another. EXHIBIT 1 at 33:12-25 and 34:1-7. It is through these computer systems that OPM will request employment-purposed consumer reports from Equifax. *Id.* These requests are processed late at night (or in the earliest hours of morning) the day after receiving the OPM request (usually between midnight and 4:00 a.m.). EXHIBIT 1 at 50:6-25, 51:1-4, 51:23-25, and 52:1-5.  Equifax, by automated means, returns employment-purposed consumer reports to OPM at the end of this early morning process which is always before 4:00 a.m. *Id.*  During this early morning process, if Equifax's computer systems detect a public record [4] on any of the employment-purposed consumer reports then Equifax's computer systems creates a public record electronic file that contains, among other things, 1681k(a)(1) notices. EXHIBIT 1 at 40:18-25, 41:1-5, and 41:12-18. This early morning process is entirely automated. No humans are involved.  EXHIBIT 1 at 33:12-25 and 34:1-7.

Such 1681k(a)(1) notices remain in the public record electronic file until they are later downloaded by Ms. Trudie Ambrose an Equifax employee. EXHIBIT 1 at 48:19-25, 49:1-5, 60:15-25 and 61-78.  While the employment-purposed consumer reports are delivered to OPM

---

4. There is no meaningful variance in Equifax's public records gathering. Equifax purchases 100% of its public records from LexisNexis. EXHIBIT 2, at No. 6.; *Soutter v. Equifax Info. Servs., LLC*, No. 3:10CV107, 2015 WL 1787236, at *2 (E.D. Va. Apr. 15, 2015).  LexisNexis is an entirely separate and legally distinct entity from Equifax. Their relationship is strictly contractual. EXHIBIT 6, Public Record Acquisition Agreement. Equifax makes no effort to obtain public record information directly for the original sources as allowed by 1681k(a)(2). EXHIBIT 1 at 10:12-25, 11:1-7. Equifax only sells reports that contain civil public records—its reports do not contain criminal records. EXHIBIT 1 at 41:19-21.

during the night time hours, Ms. Ambrose does not arrive at work until some three or four hours after. *Id.* at 69:23-25 and 70:1-6.  Upon arriving at work, Ms. Ambrose downloads whatever public record electronic file is in her queue and <u>begins printing</u> the 1681k(a)(1) notices if she has time. EXHIBIT 7, T. Ambrose Depo Tr. 11:24-15,12, 13:1-19, 16:23-25, 23:21-25 and 28:10-24.  She testified that she does not have any idea if the letters she prints on a given day are connected to the reports issued that day or a previous day. EXHIBIT 7 at 19:3-7. Ms. Ambrose job responsibilities include many other tasks that require her attention and often leave the 1681k(a)(1) notices to be dealt with when she has time. EXHIBIT 7 at 16:19-25, 17 and 18:1-9. In fact, she only works on the § 1681k(a)(1) letters when she gets down time or a break between other tasks that Equifax believes are more time sensitive. EXHIBIT 1 at 78:4-25 and 79:1-3. When Ms. Ambrose finds time, she will print the 1681k(a)(1) notices and stuff them into a preprinted envelope. EXHIBIT 7 at 16:19-25, 17 and 18:1-9. She does not seal the envelopes or provide postage. EXHIBIT 7 at 14:18-25, 15-19, 20:1-23 and 22:1-3.   At some unstated time later, Ms. Ambrose will then drop the batch of letters in an intra-company box located down the hall from her office. EXHIBIT 7 at 18:10-19. She believes a third party mail vendor then picks them up.  She does not know when. EXHIBIT 7 at 20:10-23.   Both Ms. Rivera and Ms. Ambrose testified that these 1681k(a)(1) notices are never sent "at the time" the employment-purposed background checks were furnished. EXHIBIT 1 at 42:21-25, 25:1-11 and EXHIBIT 7 at 28:10-24.  Furthermore, a cursory review of the consumer reports, 1681k(a)(1) notices and the metadata contained within the electronic files Equifax was compelled to produce by court order [5] confirm their sworn statements. For example, see EXHIBIT 8 and EXHIBIT 9 (these exhibits contain a 1681k(a)(1) notice, credit report, and

---

5. See EXHIBIT 11.

electronic file with metadata).   It is important to keep in mind that this evidence only relates to when the 1681k(a)(1) notices were printed and not when they were actually mailed.

Equifax has used the same mail vendor since 2003. EXHIBIT 10, Equifax Service Contractor Agreement. Ms. Ambrose works at the 1505/1525 Windward Concourse, Alpharetta, GA 30202 ("Windward") location. EXHIBIT 1 at 23:20-25 and 24:1. That is where she printed the 1681k(a)(1) notices. While the mail vendor collects mail at that location three times a day it does not actually mail the 1681k(a)(1) notices when it picks them up. EXHIBIT 10 at EIS-RODRIGUEZ-000873. Equifax uses the services of a courier to collect the mail from its various Atlanta locations (including Windard) in order to bring the mail to 1550 Peachtree St. NW, Atlanta, Georgia 30309 ("1550 Peachtree") for processing and mailing. *Id*. at EIS-RODRIGUEZ-000911 and 912. All outgoing mail is taken to 1550 Peachtree. *Id*. at EIS-RODRIGUEZ-000873 The Windward locations are stops six and seven – at the end of a long route. *Id*. at EIS-RODRIGUEZ-000912.

The letters that Equifax sent to OPM employment consumers were form letters and did not change in any meaningful way during the class period.   EXHIBIT 1 at 16:22-25, 17:1-8 and EXHIBIT 3.

## C.    The Class Representative's Experience [6]

### September 2012 Report

In September 2012, Plaintiff Rodriguez sought employment with a federal government contractor. He needed a security clearance for this new job. Dkt. No. 64 at ¶ 9. As part of the security clearance background investigation, the U.S. Office of Personnel Management ("OPM"), requested a credit report regarding Mr. Rodriguez from Equifax. Dkt. No. 64 at ¶ 10. OPM's

---

6. Mr. Rodriguez will not be relying on the January 10, 2014 1681k(a)(1) notice for class certification in this matter.

permissible purpose to access Mr. Rodriguez's report was employment related. Dkt. No. 64 at ¶ 11. On September 6 2012, Equifax furnished a consumer report to OPM that contained public record information likely to have an adverse effect upon Mr. Rodriguez's ability to obtain employment (i.e., bankruptcy and civil judgment). EXHIBIT 12, OPM Employment Consumer Report. Despite providing OPM the employment credit report containing derogatory public record information, the notice Equifax sent was not mailed at the time it furnished the subject report and did not identify that it came from Equifax. EXHIBIT 3 and EXHIBIT 1 at 16: 22-25, 17:1-8, 17:9-12, and 19 – 22).[7] Mr. Rodriguez was later confronted by a security clearance investigator about the bankruptcy and civil judgment that were being reported by Equifax. EXHIBIT 13, M. Rodriguez Depo Tr. 30:6-25, 31:1-6, and 47:4-17.  Mr. Rodriguez had no explanation for the civil judgment, as it did not belong to him. *Id.* and Dkt. No. 64 at ¶ 16.

Mr. Rodriguez never received a letter or any other communication from Equifax at the time the subject report was furnished.

## III.    THE PROPOSED AMENDED CLASS DEFINITION

Plaintiff's Amended Complaint suggested one class definition:

All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a consumer report furnished to OPM, (b) that was furnished for an employment purpose, (c) that contained at least one record of a civil lien, bankruptcy or civil judgment ("the public record"), (d) on or after September 5, 2012 and on or before July 17, 2014, and (e) to whom Defendant Equifax did not mail at the same time it furnished any part of the report containing the public record, a written notice that it was furnishing the subject report and containing the name of the user that was to receive the report. Excluded from the class definition are any employees, officers, directors of Defendant Equifax, any attorney appearing in this case, and any judge assigned to hear this action.

---

7. Equifax has suggested a defense based on Mr. Rodriguez's uncertainty as to whether he received the September 2012 letter.  The statute requires that Equifax send it, and not as well that the consumer receives (or recalls receiving) it.  15 U.S.C. § 1681k(a)(1).  The point of the case is that the late and textually incomplete letter Equifax did send was functionally the same as if it had sent no letter at all.

Dkt. No. 64, ¶ 22.

While Plaintiff believes that this proffered class definition is correct as is and appropriate for class certification, he has suggested four subclasses for the Court's use in determining the present motion.[8]  The first two – Subclass One and Subclass Two - merely separate the class by time based upon Equifax's late in litigation claim that it changed its letters after May 28, 2013. *Id*., ¶ 23(a) and (b).  Both of these subclasses would be founded upon the "at the time" component of Plaintiff's claim.  In contrast, Subclass Three would be founded upon the independent basis for the Court to conclude that Equifax violated § 1681k(a)(1).  The OPM letters Equifax used through the entire class period withheld Equifax's identity as the CRA that was sending the notice and they failed to state which CRA was the actual furnisher of the subject public record offering only a "it might be one of these choices" clue.  *Id*. at ¶ 23(c).

Of course, regardless of what is alleged as a proffered class definition in a complaint or in this motion, the Court is free to define the class as it finds more appropriate. *See* 2 H. Newberg and A. Conte, *Newberg on Class Actions* § 6.14 (4th ed. 2006) ("broad discretion [under Rule 23] to modify the definition of the class even after certification."); *Bratcher v. Nat'l Standard Life Ins. Co.* (*In re Monumental Life Ins. Co.*), 365 F.3d 408, 414 (5th Cir. 2004) cert. denied, 125 S.Ct. 277 (2004); *Meyer v. Citizens & S. Nat'l Bank*, 106 F.R.D. 356, 360 (M.D. Ga. 1985) ("The Court has discretion in ruling on a motion to certify a class. This discretion extends to defining the scope of the class."); *Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 655 (D. Idaho 2006) ("At the hearing in this matter, Plaintiffs offered this revised definition. The Court finds that the revised definition

---

8. Such "permissive subclasses" are merely a case management tool for the Court's use. Newberg on Class Actions (5th ed.) § 7:29 Subclasses—Overview of types. ("Because there is no conflict of interest at issue, there is no necessity that each subclass have different representation and independently comply with all of the requirements of Rule 23(a), (b), and (g), and hence, Rule 23(c)(5) is inapplicable.")

better reflects Plaintiffs' claims in these actions. Therefore, the Court will consider the revised definition in making its class certification determination."). *See also Woods v. Stewart Title Guaranty Company*, 2007 WL 2872219 (D. Md. Sept. 17, 2007) (certifying a class of individuals as proposed by plaintiffs during class certification briefing that was broader than the class plaintiffs' alleged in the class action complaint after discovery uncovered a broader group of individuals harmed by the same practice alleged in the complaint).

## IV. PLAINTIFF'S CLAIM SATISFIES EACH OF THE THRESHOLD REQUIREMENTS FOR CLASS CERTIFICATION

This case presents the most common type of Rule 23 motion – one seeking certification for money damages pursuant to Fed. R. Civ. P. 23(b)(3).  This requires the Plaintiff to rigorously satisfy two threshold rules, Rule 23(a), which every class action must meet, and Rule 23(b)(3), the relevant type of class certification in this case.

While the Court must "undertake[] the 'rigorous' analysis required under Supreme Court precedent, *see Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 2551 (2011), [it should] nevertheless [be] mindful of our court of appeals' admonition that Rule 23 should be accorded a liberal construction 'which will in the particular case 'best serve the ends of justice for the affected parties and ... promote judicial efficiency.' '*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir.2003) (quoting *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir.1989))." *Coleman v. Union Carbide Corp.*, Civ. No. 2:11-0366, 2013 WL 5461855, at *1 (S.D.W. Va. Sept. 30, 2013). Federal courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *see Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *In re Mexican Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly certified for class treatment").  This is true as well in this District and particularly as to claims brought for statutory

damages under the FCRA.  *See e.g. Soutter v. Equifax Information Services, LLC*, 3:10cv107-REP,

2015 WL 1787236 (E.D.Va., Apr. 15, 2015); *Milbourne v. JRK Residential Am., LLC*, No.

3:12CV861, 2014 WL 5529731 (E.D. Va. Oct. 31,2014); *Dreher v. Experian Info. Solutions, Inc.*,

No. 3:11-CV-00624-JAG, 2014 WL 2800766 (E.D. Va. June 19, 2014); *Cappetta v. GC Services*

*LP*, Civ. No. 3:08cv288, Dkt. No. 225 (E.D.Va. Nov. 12, 2009); *Williams v. LexisNexis Risk*

*Mgmt. Inc.*, Civ. No. 3:06cv241, 2007 WL 2439463, at *8 (E.D. Va. Aug. 23,2007).[9]  See also

As the Fourth Circuit has recently summarized:

[A] rigorous analysis into the Rule 23(a) and Rule 23(b)(3) requirements will
clearly contain the following elements. **First**, a district court must decide whether
"the class is so numerous that joinder of all members is impracticable."
Fed.R.Civ.P. 23(a)(1).  **Second**, a district court must determine whether even a
*single* question of fact or law is common to the class. Such questions will depend on
a "common contention," the resolution of which will resolve "an issue that is central
to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S.Ct. at
2551; *see also Ross*, 667 F.3d at 908-10 (7th Cir.2012). **Third**, a district court must
determine whether the claims (or defenses) of the representative parties are typical
of those of the class as a whole by comparing the claims of the representatives with
the claims of the absent class members and determining whether they tend to
advance the same interests. *See Deiter*, 436 F.3d at 466-67.
**Fourth**, a district court must determine whether "the representative parties will
fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4).
Finally, [**Fifth**] if seeking class certification pursuant to Rule 23(b)(3), a district
court must determine whether common questions of law or fact predominate over
individual questions such that a class action is the superior method for resolving the
controversy. This separate inquiry will require a district court to balance common
questions among class members with any dissimilarities between class members.
*See Gunnells*, 348 F.3d at 427-30. [**Sixth**] If satisfied that common questions
predominate, a district court should then also consider whether any alternative
methods exist for resolving the controversy and whether the class action method is
in fact superior. *See, e.g., Stillmock*, 385 Fed.Appx. at 273-75.

*Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 307-08 (4th Cir. 2013). *See* FED. R. CIV.

P. 23(b)(3).  Plaintiff addresses each Rule 23(a) and Rule 23(b)(3) element in turn.

Initially, Plaintiff notes the importance of one recent decision over others - *Soutter v.*

---

9 Each of these are among the FCRA cases certified over opposition.  Countless more have been
found appropriate for class certification after settlement.

*Equifax Information Services, LLC*, 3:10cv107-REP, 2015 WL 1787236 (E.D.Va., Apr. 15, 2015).

Plaintiff's counsel of course likes the decision because he is also counsel in the case and Equifax is

also the defendant.   But that is not the reason Judge Payne's decision is significant.   Instead,

*Soutt*er offers as complete a recitation of the current state of the law as to each element of Rule 23

as can be found in this District or Circuit over the last several years.   There are also a number of

FCRA-specific defense arguments used to challenge class certification.[10]   In *Souter*, Equifax

made nearly every one.   The Court's analysis in this case gains a meaningful headstart with the

consideration (to accept or reject) of the statements of law offered in the decision.

### A.      All Four Rule 23(a) Prerequisites are Satisfied

### 1.      Numerosity is satisfied.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." There is no set minimum number of potential class members that fulfills the

numerosity requirement.  *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (citing

*Kelley v. Norfolk & Western Ry. Co.*, 584 F.2d 34 (4th Cir. 1978)). Where the class numbers 25 or

more, joinder is usually impracticable. *Cypress v. Newport News  Gen'l  & Nonsectarian Hosp.*

*Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (finding that 18 class members was sufficient to fulfill the

numerosity requirement); *Souter v. Equifax Information Services, LLC*, at 9, 2015 WL 1787236,--

F.R.D. ___ Civil Action No. 3:10cv107, (E.D. Va. April 15, 2015) (citations omitted)(certifying a

class of "at least" 1,000). In this case, Equifax has stipulated to numerosity, has provided verified

discovery responses confirming that the class size is well over the 1,000 estimate in Souter, and

has produced in discovery thousands of reports and notice letters (as a result of a discovery order).

---

10. In this case, however, Equifax is limited to a small range of challenges that it may assert
against class certification. Those such limited challenges are identified in its interrogatory answers.
See EXHIBIT  2.

The Class is sufficiently numerous that joinder is impracticable.

In addition to the stated elements of Rule 23(a), courts – including the Fourth Circuit – have implied a threshold of identifiably or ascertainability.[11]  As the Court recently explained, "In order to certify a class under Rule 23, a court must be able to 'readily identify the class members in reference to objective criteria.' Although the plaintiff 'need not be able to identify every class member at the time of certification,' the plaintiff must demonstrate that class members will be identifiable 'without extensive and individualized fact-finding or 'mini-trials[ .]'" *Souter*, 2015 WL 1787236, at *6 (citation omitted).  In this case, unlike in Souter, Equifax has largely conceded this element.  It retains the actual credit reports it sold.  It used the same notice procedures for each person.  And in fact, it has produced the actual documents for two full months during the class period. For example, see EXHIBIT 8 and EXHIBIT 9.

## 2.    There Are Questions Of Law and Fact Common To The Class.

Commonality is satisfied because the class claim arises from the application of an identical statutory provision to standardized forms and conduct.

"Rule 23(a)(2) requires that the court find that 'that there are questions of law or fact common to the class,'" but complete identity of fact or law questions is not necessary. *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992) *aff'd*, 6 F.3d 177 (4th Cir. 1993).  "Commonality is satisfied where there is one question of law or fact common to the class, and a class action will not be defeated solely because of some factual variances in individual grievances." *Jeffreys v. Comm'n Workers of Am., AFL-CIO*, 212 F.R.D. 320, 322 (E.D. Va. 2003). More recently, the Fourth Circuit has restated the standard for commonality, based upon the

---

11. These two concepts are different – **identifiably** is the mechanical process to identify class members.  That process must be manageable to satisfy Rule 23(b)(3) superiority.  Ascertainability was historically used to describe the requirement that class members must be objectively described.  However, recent jurisprudence has tended to combine the two and so Plaintiff now does as well.

Supreme Court's clarification of the concept:

> Commonality is generally established when a Plaintiffs' claims have "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court recently clarified, in order to satisfy the commonality requirement, the plaintiff must "demonstrate that the class members 'have suffered the same injury,' " *Wal-Mart Stores, Inc., v. Dukes*, ---U.S. ----, ----, 131 S. Ct. 2541, 2551(2011) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)), and that the claim "depend[s] upon a common contention" that "is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," *id.*

*Gray v. Hearst Commc'ns., Inc.*, 444 F. App'x 698, 700-01 (4th Cir. 2011).   "Rule 23(a)(2) 'does not require that all, or even most issues be in common.' A single common question will satisfy Rule 23(a)(2)'s commonality requirement." *Adair v. EQT Prod. Co.*, 1:10-CV-00037, 2013 WL 5429882, at *35 (W.D. Va. Sept. 5, 2013) *report and recommendation adopted as modified sub nom. Hale v. CNX Gas Co., Inc.*, 1:10CV00059, 2013 WL 5429901 (W.D. Va. Sept. 30, 2013) (internal citations omitted). "A point of commonality must be specific – and relevant – enough that it could help form the basis for the success of an individual claim." *Souter v. Equifax Information Services, LLC*, at 10, 2015 WL 1787236.

Critically, the common questions in this case can be resolved with reference to standardized conduct and documents, making them particularly susceptible to class treatment. Since the claims of all class members derive from the same form notice and procedures implemented by Equifax, there is certainly a common question of law or fact.   Commonality requires that there be at least one question of law or fact common to the members of the class. *Jeffreys*, 212 F.R.D. at 322; *Central Wesleyan  College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), *aff'd* 6 F.3d 177 (4th Cir. 1993) (stating that commonality "does not require that all, or even most, issues be common, nor that common issues predominate, but only that common issues exist.")  Commonality is a liberal standard, and the fact that there are some factual variations in individual grievances among class members does not defeat commonality. *Jeffreys*, 212 F.R.D.

at 322. "'Minor differences in the underlying facts of individual class members cases do not defeat a showing of commonality where there are common questions of law.'" *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006).

Most principally, the core common questions are (a.) whether Equifax's notice form and procedure violated § 1681k(k)(1) because it was not sent "at the time" the corresponding report was furnished and/or because it disguised or failed to disclose the sender CRA as Equifax [12]; and (b.) whether these violations were willful. Both of these - basic FCRA liability and FCRA willfulness - are common issues. *Souter v. Equifax Info. Servs., LLC*, No. 3:10CV107, 2015 WL 1787236, at *18 (E.D. Va. Apr. 15, 2015) ("[C]ommon evidence applicable across all class members regarding willfulness will resolve a common contention and drive the litigation forward by common answers."); *Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2014 WL

---

12. The Supreme Court's *Wal-Mart v. Dukes* decision is an important commonality decision. It reversed the Ninth Circuit's affirmance of class certification in a Title VII case because the class was connected only by the law that was alleged to have been violated rather than by the specific procedure(s) or conduct alleged to have been the violation. *Wal-Mart*, 131 S.Ct. at 2551. Equifax always relies on this unremarkable point. In *Souter*, Judge Payne considered the argument in the context of a discrete FCRA violation:

> *Wal-Mart* makes clear that the question whether a defendant violated the law does not satisfy Rule 23(a)(2). The Fourth Circuit agreed in *Souter II*, holding that "members of a proposed class do not establish that 'their claims can productively be litigated at once,' merely by alleging a violation of the same legal provision by the same defendant." 498 F. App'x at 265 (quoting *Wal-Mart*, 131 S.Ct. at 2551 (quotations and citation omitted)). Here, however, Souter does not ask "Did Equifax violate § 1681e(b)?" Rather, she asks "Did *these procedures* violate § 1681e(b)?" In *Wal-Mart*, the claims all challenged the same statute, but the specific policies and procedures that were challenged all varied. Thus, the claims were tied together at an impermissibly general, and superficial, level. Unlike in *Wal-Mart*, the putative class members in this case allege violation of the same statute *in the same way*. And the question, as phrased by Souter, incorporates the specific, common procedures at issue above.

*Souter*, 2015 WL 1787236, at *16. As in *Souter*, Mr. Rodriguez alleges a specific course of conduct, procedure and form as the basis for his and the class claim.

5529731, at *5 (E.D. Va. Oct. 31, 2014)("JRK has admitted that it has used a standardized waiver and disclosure form for all class members, including Milbourne. Thus, if Milbourne is able to establish that JRK's waiver did not satisfy Section 1681b(b)(2)'s requirements this issue will be resolved not only in Milbourne's favor, but in the favor of all class members. Thus, the legality of the forms is of "such a nature that it is capable of classwide resolution" and satisfies the commonality requirement for the Impermissible Use Class. *Dukes,* 131 S.Ct. at 2551. [...] JRK has indicated that its practices were standardized during the class period. Thus, if JRK's actions violated Milbourne's § 1681b(b)(3)(A) rights, they also violated other class members' rights as well. Therefore, the resolution of Milbourne's claim would provide "classwide resolution." *Dukes,* 131 S.Ct. at 2551."); *Dreher v. Experian Info. Sols., Inc.*, 3:11-CV-00624-JAG, 2014 WL 2800766, at *1 (E.D. Va. June 19, 2014) ("[T]he class meets the commonality requirement. The common factual and legal issues include: (1) … (2) whether Experian's failure to list "Cardworks" as a source of information violated § 1681(g)(a)(2); and finally, (3) whether Experian's violation of that statutory section was willful."). *See also Reardon*, 2011 WL 1628041, at *6 (W.D. Pa. Apr. 27, 2011)("Here, there are numerous forms used by ClosetMaid to obtain consent to procure a consumer report from the class member violated the FCRA; whether ClosetMaid relied on derogatory information in consumer reports to deny employment to the sub-class members in violation of the FCRA; whether ClosetMaid was required by the FCRA to provide a copy of the consumer report to sub-class members at least five (5) days before refusing to hire the subclass members; and whether ClosetMaid acted willfully. Accordingly, plaintiff has established commonality."); *Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463, at *4 (E.D. Va. Aug. 23, 2007) (Finding commonality in § 1681k(a)(1) claim).

### 3.    The Claims Of The Named Plaintiff Are Typical Of Those of the Class.

Pursuant to Rule 23, a class representative's claims or defenses must be "typical" of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3).   Typicality demands "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006); *accord Soutter v. Equifax Info. Servs., LLC*, 498 F. App'x 260, 264 (4th Cir. 2012); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).  The Plaintiff's interest in prosecuting his case must advance the interests of the class. *Soutter*, 498 F. App'x at 264.  Moreover, class representatives must not have an interest that is antagonistic to that of the class members.  *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 538 (E.D.N.C. 1995).   As the Fourth Circuit has previously held, the essence of typicality is that:  "as goes the claim of the named plaintiff, so go the claims of the class." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998); *accord Deiter*, 436 F.3d at 466; *Soutter*, 498 F. App'x at 264.   Nonetheless, this does not require that a class representative's claims be perfectly identical to the class members' claims.  *See, e.g., Broussard*, 155 F.3d at 337; *Deiter*, 436 F.3d at 467; *Soutter*, 498 F. App'x at 265; *In re Mills Corp. Sec. Litig.*, 257 F.R.D. 101, 105 (E.D. Va. 2009).  Rather, "the interests of the party representing a class must be substantially similar to those of the unrepresented parties." *In re Mills*, 257 F.R.D. 101, 105 (E.D. Va. 2009); *see also In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 538 (E.D. Va. 2006).  However, "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." *In re BearingPoint*, 232 F.R.D. at 538.

Mr. Rodriguez's claim is typical of that of other class members.  He, as every class member, alleges a violation of the same FCRA provision, 15 U.S.C. §1681k(a)(1).  Plaintiff's proof of each of the elements in his case will advance the class claim in proportionate degree.

"The evidence [Plaintiff] will rely on to establish each element of the case will similarly establish the claims of each absent class member." *Dreher v. Experian Info. Solutions, Inc.*, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014).  The Plaintiff's interests are squarely aligned with those of the putative class members.  His FCRA claim arises out of Equifax's same policy and procedure violations as those of the proposed class members.  "Because there are no factual differences between claims and the members all raise the same legal issue as [the Plaintiff], there are no factual or legal differences between the class members' claims and [Plaintiff's'\] claim. … For the foregoing reasons, the typicality factor is satisfied." *Milbourne* at 7, 2014 WL 5529731 (citations omitted).  The Plaintiff's claim is typical of the proposed class members and meet the requirements of Rule 23(a).

### 4.    Plaintiff  Adequately Represent the Class.

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This standard is met if "the named plaintiff has interests common with, and not antagonistic to, the [c]lass' interests; and ... the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *In re Se. Hotel Props. Ltd. P'ship Investor Litig.,* 151 F.R.D. 597, 606–07 (W.D.N.C.1993)." *Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014).

"The burden is on the defendant[] to demonstrate that the representation will be inadequate." *Johns v. Rozet*, 141 F.R.D. 211, 217 (D.D.C. 1992); *see also In re Southeast Hotel Properties Ltd.  P'ship Investor Litig.*, 151 F.R.D. at 607; *Lewis v. Curtis*, 671 F.2d 779, 788 (3rd Cir. 1982); *Trautz v. Weisman*, 846 F. Supp. 1160, 1167 (S.D.N.Y. 1994).  To defeat the adequacy requirement of Rule 23, a conflict "must be more than merely speculative or hypothetical." *Gunnells v. Healthplan  Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003)(citing 5 Moore's Federal Practice  § 23.25[4][b][ii] (2002)). "[T]he adequacy inquiry itself focuses on conflicts of interests."

*Soutter*, at 25, 2015 WL 1787236.

Equifax cannot possibly satisfy that burden since both components of the "adequacy'" test are plainly met here. Plaintiff's counsel is experienced in class action work as well as consumer protection issues under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., and has been approved as Class counsel in numerous cases before this Court. As this Court earlier stated, "the Court finds that Soutter's counsel [Bennett] is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases." *Soutter v. Equifax Info. Servs., LLC*, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) *reversed on other grounds*; *Dreher v. Experian Info. Sols., Inc.*, 3:11-CV-00624-JAG, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014) ("Dreher's counsel is well-experienced in the arena of FCRA class action litigation."); *Soutter*, at 32, 2015 WL 1787236, ("The Court appoints Leonard Anthony Bennett as class counsel[.]").

Further, Plaintiff himself does not have any interests antagonistic to those of the proposed class and has cooperated with his counsel and pursued this litigation vigorously to redress the wrongs alleged. EXHIBIT 14, Bennett Decl. Both the named Plaintiff and the proposed class share an identical interest in establishing Defendant's liability. To establish liability, all members of the proposed class seek the same findings on the common questions of law and fact. No apparent or even imagined antagonism exists between the named Plaintiff and the members of the putative class.

**B.     Plaintiffs' Claims Satisfy The Requirements For Class Certification Under Rule 23(b)(3).**

Under Fed. R. Civ. P. 23(b)(3), an action that satisfies the threshold prerequisites for certification may be maintained as a class action if the court finds that: (1) "the questions of law or

fact common to the members of the class predominate over any questions affecting only individual members"; and (2) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Plaintiff's claim satisfies these requirements.

> **1.      Common questions predominate because the Class claims arise from a common nucleus of fact and involve overriding common questions.**

The focus of the Rule 23(b)(3)'s predominance inquiry is on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2245, 138 L. Ed. 2d 689 (1997).  As the Court explained in the context of a comparable FCRA case:

> The Fourth Circuit has held that "where ... the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner", predominance is satisfied. *Stillmock v. Weis Markets, Inc.,* 385 F. App'x 267, 273 (4th Cir.2010). *See also Dreher v. Experian Info. Solutions, Inc.,* 2014 U.S. Dist. LEXIS 85951, at *6 (E.D.Va.2014) ("The question of [Defendant's] liability represents the central, dominant issue before the Court, and while some questions may exist as to how to best apportion statutory damages, those questions do not preclude the common issue of liability from predominating."). Further, "common issues of law and fact predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Stillmock,* 385 Fed. App'x at 273 (internal quotation marks omitted).

*Milbourne,* 2014 WL 5529731, at *11.

Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members. *Simmons v. Poe*, 47 F.3d 1370, 1380 (4th Cir. 1995). The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.  *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004)(citing *Amchem Prods.*, 521 U.S. at 623-24). "[T]he question of a [FCRA defendant's] liability represents the central, dominant issue before the Court, and while some questions may exist as to how to best apportion statutory damages, those questions do not preclude the common issue of liability from predominating."  *Dreher*, 3:11-CV-00624-JAG, 2014

WL 2800766, at *2-3. "While potential individual issues remain for each class member (i.e. the time frame in which they received a disclosure of adverse action, if any), these issues are not such that they would predominate over the class-wide issues. Rather, the common issues such as the language of the disclosure form, [the employer's] notification and adverse action practices, and [the employer's] willfulness." *Milbourne*, at 11, 2014 WL 5529731. As the Fourth Circuit explained in reversing denial of certification in a FCRA case:

> Where, as here, the qualitatively overarching issue by far is the liability issue of the defendant's willfulness, and the purported class members were exposed to the same risk of harm every time the defendant violated the statute in the identical manner, the individual statutory damages issues are insufficient to defeat class certification under Rule 23(b)(3).

*Stillmock v. Weis Markets, Inc.*, 09-1632, 2010 WL 2621041 (4th Cir. 2010). *See also Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463, at *6 (E.D. Va. Aug. 23, 2007)(finding Rule 23(b)(3) predominance in nearly identical § 1681k(a)(1) case).

As with commonality, it is actually difficult to theorize purely individual questions in the case. With form notices and print/mail procedures for the notices that are identical across the class there are few individual issues besides the calculation of statutory damages (based on number of violations).

**2.     The Class Action Device Is Superior To Other Available Methods For Adjudicating This Controversy.**

Finally, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3). *Lienhart*, 255 F.3d at 142; *In re A.H. Robins Co., Inc.*, 880 F.2d at 713. As the Court explained:

> The analysis under this facet of Rule 23(b)(3) is a comparative one. The court must first "consider what other procedures, if any, exist for disposing of the dispute before it." *Id.* Next, the court must "compare the possible alternatives to determine whether Rule 23 is sufficiently effective to justify the expenditure of the judicial time and energy that is necessary to adjudicate a class action and to assume the risk of prejudice to the rights of those who are not directly before the court." *Id.* In

> determining whether the class mechanism is truly superior, the court should consider "(1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability." *Hewlett,* 185 F.R.D. at 220 (summarizing the factors set out in Fed.R.Civ.P. 23(b)(3)).

*Soutter v. Equifax Info. Servs., LLC*, No. 3:10CV107, 2015 WL 1787236, at *30 (E.D. Va. Apr. 15, 2015).  The Rule 23(b)(3) "superiority" factors consider a comparison between litigation of the claim at issue on a class action basis versus as a series of individual lawsuits brought one by one by class members.

Ordinarily, this factor is argued primarily as an efficiency or impracticality question.  "It would waste judicial resources to force hundreds of individual trials."  Or, "Individual consumers are unlikely to risk, fund and litigate an individual case for $1,000 in statutory damages."  These arguments are correct. *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 275 (4th Cir. 2010)(Finding superiority for FCRA claim in reversing denial of class certification); *Williams v. LexisNexis Risk Mgmt. Inc.*, No. CIV A 306CV241, 2007 WL 2439463, at *9 (E.D. Va. Aug. 23, 2007) (IN § 1681k(a)(1) case, "The proposed classes involve at least hundreds, perhaps thousands, of proposed class members pursuing identical, fairly small claims for relief, who, if required to proceed individually, probably would not assert their claims. The class action device therefore appears to be a superior means of resolving their disputes.")

In fact, aside from the economic deterrent to bringing such a case, class members likely would never think to bring individual claims because they are unaware their rights have been violated-having little lay knowledge of the complex blanket of FCRA protections.  *See, e.g., Bonner v. Team Toyota LLC*, 2006 WL 3392942, at *5 (N.D. Ind. Nov. 21, 2006) ("[M]any of the persons in these classes may be unaware that the form letter sent by Defendants may violate the FCRA, and a class action suit may help to safeguard their rights."); *White v. Imperial Adjustment Corp.*, 2002 WL 1809084, at *16 (E.D. La. Aug. 6, 2002) *aff'd in part, appeal dismissed in part*

*and remanded,* 75 F. App'x 972 (5th Cir. 2003) ("Because . . . individual putative class members may not be aware of the violation of their [FCRA] rights, it appears improbable that the putative class members would possess the initiative to litigate their claims individually.").

Efficiency is a primary focus in determining whether the class action is the superior method for resolving the controversy presented. "[E]ven if just a fraction of the class members were to bring individual suits, the adjudication of the common issues in a single proceeding would be more efficient than the separate adjudication of individual claims. *Soutter,* at 31, 2015 WL 1787236 (citations omitted). In examining such factor, it is proper for a court to consider the "...inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Citifinancial v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974). Rule 23(b)(3) was designed for situations such as this, where the amount in controversy for any individual claimant is small, but injury is substantial in the aggregate. Here, Plaintiff seeks statutory damages of no more than $1,000 for violation, as well as punitive damages.

The reality is that class litigation is not only the most efficient means of adjudicating these disputes; it is effectively the *only* means. The reality is that the alternative to class treatment in these cases is not thousands, or even hundreds, of individual actions, but few or none at all. *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010) ("The low amount of statutory damages available means no big punitive damages award on the horizon, thus making an individual action unattractive from a plaintiff's perspective. Second, there is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of FCRA by individual actions of a scale comparable to the potential enforcement by way of class action. "). *See also Soutter v. Equifax Info. Servs., LLC*, No. 3:10CV107, 2015 WL 1787236, at *30 (E.D. Va. Apr. 15, 2015)

24

("Notwithstanding Equifax's sundry citations to contrary holdings outside the Fourth Circuit, this Court is persuaded to follow in *Stillmock's* footsteps.")  As Judge Easterbrook noted in *Murray v. GMAC Mortgage*, "Rule 23(b)(3) was designed for situations such as [those involving FCRA statutory damage claims], in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."  434 F.3d at 953; *see also Bonner*, 2006 U.S. Dist. LEXIS 54418, at *21-22.  There simply is no other practical means for the members of these proposed classes to challenge a practice that stands in clear violation of federal law.  "The desirability of providing recourse for the injured consumer who would otherwise be financially incapable of bringing suit and the deterrent value of class litigation clearly render the class action a viable and important mechanism in challenging fraud on the public."  6 H. Newberg and A. Conte, Newberg on Class Actions § 21:30 (4th ed. 2003).

Litigation of this narrow § 1681k(a)(1) claims, targeting a uniform procedure and form notice is certainly superior to any alternative.

## CONCLUSION

The proposed class meets the requirements of Rule 23(a) as well as Rule 23(b)(3).  On this basis, the Plaintiff respectfully moves that the Court grant his Motion for Class Certification.

MIGUEL A. RODRIGUEZ *on behalf of himself and all others similarly situated*

By: _____ */s/ John C. Bazaz*_____
            Counsel

John C. Bazaz, Esq., VSB #70796
Counsel for Mr. Rodriguez
Law Offices of John C. Bazaz, PLC
4000 Legato Road, Suite 1100
Fairfax, VA 22033
Telephone: 703-272-8455
Facsimile: 703-596-4555
jbazaz@bazazlaw.com

<u>Certificate of Service</u>

I hereby certify that on May 1, 2015, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the counsel who appear in the CM/ECF system:

John W. Montgomery, Jr., Esq.
Counsel for Equifax Information Services LLC
John W. Montgomery, Jr., Attorney, PLC
2116 Dabney Road, Suite A-1
Richmond, VA 23230
Telephone (804) 355-8744
Facsimile (804) 355-8748
Email: jmontgomery@jwm-law.com

Tony Love, Esq.
Counsel for Equifax Information Services LLC
King & Spalding LLP
1180 Peachtree Street NE
Atlanta, GA 30309-3521
Telephone: 404.572.2565
Facsimile: 404.572.5100
TLove@KSLAW.com

Matthew James Erausquin, Esq.
Consumer Litigation Associates PC (Alex)
1800 Diagonal Rd., Suite 600
Alexandria, VA 22314
703-273-7770
Fax: 888-892-3513
Email: matt@clalegal.com

Leonard Anthony Bennett, Esq.
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660
Fax: 757-930-3662
Email: lenbennett@clalegal.com

Casey Shannon Nash
Consumer Litigation Associates PC (Alex)
1800 Diagonal Rd., Suite 600
Alexandria, VA 22314
703-273-7770
Fax: 1-888-892-3512
Email: casey@clalegal.com

Susan Mary Rotkis
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
757-930-3660
Fax: (757) 930-3662
Email: srotkis@clalegal.com

        */s/ John C. Bazaz*
John C. Bazaz, Esq., VSB #70796
Counsel for Mr. Rodriguez
Law Offices of John C. Bazaz, PLC
4000 Legato Road, Suite 1100
Fairfax, VA 22033
Telephone: 703-272-8455
Facsimile: 703-596-4555
jbazaz@bazazlaw.com

27