IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MIGUEL A. RODRIGUEZ,<br>*on behalf of himself and all others similarly situated*,<br><br>    Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>    Defendant. | Civil Action No. 1:14-cv-01142 (AJT/MSN) |

## MEMORANDUM OPINION

Plaintiff, Miguel Rodriguez, brings this class action alleging that Defendant, Equifax Information Services, LLC ("Equifax" or "Defendant") violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681. Presently pending before the Court are Plaintiff's Motion for Class Certification [Doc. No. 70] and Defendant's Motion for Summary Judgment [Doc. No. 80]. Upon consideration of the motions, the memoranda and exhibits in support thereof and in opposition thereto, the arguments made by counsel at the hearing held on June 26, 2015, and for the reasons stated below, the Court concludes that Plaintiff has failed to present evidence sufficient to establish that Equifax violated 15 U.S.C. § 1681k or § 1681e(b), or alternatively, that any violation was negligent or willful. Accordingly, for the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Class Certification is DENIED as moot.

### I. FACTUAL AND PROCEDURAL HISTORY[1]

*Facts related to Equifax-OPM Contract*

---

[1] The facts stated herein are undisputed in the record, except where otherwise indicated.

Defendant Equifax, together with Experian and Trans Union, is one the three largest "consumer reporting agencies" (CRA), as defined in 15 U.S.C § 1681a(f). [2] Under the FCRA, a CRA, such as Equifax, has certain obligations when it provides information to an actual or prospective employer. Specifically, when a CRA "furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment," it shall "(1) <u>at the time</u> such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported[.]" 15 U.S.C.A. § 1681k(1)(West) (emphasis added). [3]

This action centrally concerns whether Equifax timely notified certain consumers whose information was requested by the U.S. Office of Personnel Management (OPM). Specifically, between September 2012 and May 2013, Equifax prepared and delivered to OPM customized

---

[2] "The term 'consumer reporting agency' means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C.A. § 1681a (West).

[3] Alternatively , § 1681k(2) provides that the CRA shall:

> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

2

"tri-merge" reports (containing information from Equifax, Experian and Trans Union) when requested by OPM pursuant to the terms of a written contract between Equifax and OPM,[4] Def. Ex. D, Doc. No. 81-4 ("Rivera Decl.") at ¶ 4. For this purpose, Equifax used an automated overnight batching process that operated between midnight and 3:00 a.m. EST. *Id*; Rivera Dep. Tr. at 52:1-5. As part of the automated process, reports containing information from public record (PR) files were flagged, which automatically caused the creation of a notice specific to each individual whose report was flagged. Rivera Dep. Tr. at 69:13-15. As a matter of routine, at approximately 7:00 a.m. each morning (during the time period relevant to this litigation), an Equifax employee named Michelle Ambrose downloaded the PR file containing all of the notices created by the automated process, printed each notice, put them in envelopes, and place them in a mail bin for pickup that day by the mail vendor with whom Equifax had contracted for that purpose.[5] Def. Ex. F, Doc. No. 81-6 ("Ambrose Decl.") at ¶¶ 3, 5-6. Ambrose did not maintain a record of when she placed each individual notice into the mail bin. There were concededly occasions when Ambrose did not deposit the notices into the mail bin until the next business day after she printed them, although the record reflects only isolated examples of such occasions. *Id*. at ¶¶ 6-7. The record contains no information concerning when the mail vendor actually mailed the notices that it picked up daily from Equifax pursuant its contract.

*Facts related to Plaintiff Miguel Rodriguez*

---

[4] The contract has been produced under seal at Doc. No. 86-4.

[5] In May 2013, Equifax switched to a completely automated platform called Persona, which generates the notices. From May 2013 until July 2014, Equifax would send two notices to consumers: one through the manual process, and one through the automated process. In July 2014, Equifax ceased use of the manual process. Rivera Decl. at ¶¶ 8-9.

3

Plaintiff is a consumer who was seeking employment as a federal government contractor in September 2012; and as part of a security clearance background investigation for that position, OPM requested from Equifax consumer reports regarding Plaintiff. Equifax provided OPM with a "tri-merge" consumer report that contained a reference to a public record listing of a bankruptcy and a civil judgment, as well as a collection account.[6] After Equifax provided this consumer report to OPM, an OPM security clearance investigator asked Plaintiff about the listed bankruptcy and civil judgment. Plaintiff was "floored" when the investigator asked about the civil judgment, and told the investigator that he "knew nothing about it." Rodriguez Dep. Tr. at 68:3-4.[7] The investigator did not make any follow-up request to Plaintiff after the interview. *Id.* at 68:19-24. Approximately two months later, in December 2012, Plaintiff's security clearance was approved. *Id.* at 21:2-11.

Plaintiff has asserted two causes of action in his Amended Complaint, Doc. No. 64, filed on April 27, 2015. First, Plaintiff alleges that Equifax provided OPM with a consumer report containing public record information that would likely have an adverse effect upon Plaintiff's

---

[6] Plaintiff does not contest that he filed for bankruptcy in January 2009, and that Equifax accurately reported his bankruptcy. Rodriguez Dep. Tr. at 58:12-16. He disputes, however, the entry of a delinquent Sears credit card account on the grounds that the Sears account was discharged in bankruptcy and should not have appeared as delinquent. Plaintiff's Opp., Doc. No. 108 at p.7, ¶ 31. Equifax in turn disputes Plaintiff's allegation that the Sears collection was improperly reported because Equifax reported that Sears account with a zero balance in February 2009, one month after Plaintiff filed for bankruptcy and Sears had sold the account before Equifax received notice of the bankruptcy. Doc. No. 81 at p. 9, ¶ 33.

Plaintiff also disputes the $11,338 civil judgment reported by Equifax on the grounds that the judgment itself reflected that it was against someone with a different name. Plaintiff's Opp., Doc. No. 108 at p. 27. The record reflects that the civil judgment (which was listed as having no outstanding amount) was, in fact, in the name of Rodriquez' brother, not his name.

[7] To the extent either party has moved to place the cited portions of Plaintiff's deposition under seal, that motion is denied.

4

ability to obtain employment (the bankruptcy and civil judgment), but failed to provide notice to him "at the time" it furnished the report to OPM, as required by 15 U.S.C. § 1681k(a)(1) (the class claim). Although Plaintiff claims that he never received the required notice, Rodriguez Dep. Tr. at 97:16-22, he more generally challenges the adequacy of Equifax's then used system for providing notice to consumers and has moved for class certification on this claim. Second, Plaintiff alleges, as an individual claim only, that the consumer report on him provided by Equifax to OPM contained an objectively incorrect civil judgment under a name other than his and a "collection amount" that had been discharged in bankruptcy; and for these reasons, Equifax violated 15 U.S.C. § 1681e(b),[8] which requires Equifax to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report it furnished to OPM. Plaintiff seeks statutory damages in connection with his § 1681k claim (the class claim), actual damages in connection with his § 1681e claim (the individual claim), and punitive damages, attorneys' fees and costs as to both claims.

## II. Legal Standard

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958–59 (4th Cir.1996). The party

---

[8] 15 U.S.C. § 1681e(b) provides:

(b) Accuracy of report

Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

5

seeking summary judgment has the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir.2007). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248. Whether a fact is considered "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

"Before harnessing [class action] economies, Rule 23(a) demands that four prerequisites be met: '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representative's claims or defenses are typical of those of the class; and (4) the representative will fairly and adequately represent the interests of the class.'" *Soutter v. Equifax Info. Servs., LLC*, No. 3:10CV107, 2015 WL 1787236, at *4 (E.D. Va. Apr. 15, 2015) (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998)). "In addition, putative classes must satisfy one of the Rule 23(b) tests. Where, as here, the plaintiff seeks certification under Rule 23(b)(3), the Court must ensure that 'questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy.' Because adjudication by class is an exception to the normal rules of litigation, the Court must perform a "rigorous analysis" of each class certification factor." *Id.* (quoting Fed.R.Civ.P. 23(b)(3)).[9]

### III. ANALYSIS

"The FCRA provides a private cause of action for those damaged by violations of the statute. *See* 15 U.S.C.A. §§ 1681n, 1681o. A successful plaintiff can recover both actual and punitive damages for willful violations of the FCRA, *id.* § 1681n(a), and actual damages for negligent violations, *id.* § 1681o(a). Actual damages may include not only economic damages, but also damages for humiliation and mental distress." *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 500 (4th Cir. 2007). "FCRA does not impose strict liability on consumer reporting agencies for inaccuracies in reporting. Instead, FCRA imposes liability for negligent noncompliance with the Act, and it allows for enhanced penalties for willful violations." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 417 (4th Cir. 2001).

### A. Section 1681k(a)(1)

Reflecting his theory of liability under Section 1681k(a)(1), Plaintiff's proposed class includes all those person who (a) were the subject of a consumer report furnished to OPM, (b) for employment purposes, (c) that contained at least one record of a civil lien, bankruptcy or civil judgment, (d) on or after September 5, 2012 and on or before May 28, 2013[10] and (e) to whom

---

[9] Plaintiff's Amended Complaint also alleges that injunctive relief is appropriate for the class pursuant to Fed. R. Civ. P. 23(b)(2). Doc. No. 64 at ¶¶ 30-36. However, Plaintiff appears to have abandoned this argument in its class certification briefing. Doc. No. 71 at p. 20-25.

[10] Plaintiff originally requested that the class period end in July 2014. He subsequently conceded in his Reply Memorandum in Support of his Motion for Class Certification, Doc. No. 97 at p. 18, that he cannot represent the post-May 2013 class.

Equifax never sent the required notice "at the time" it sent the reports to OPM. He also contends that the content of the standard notice sent did not satisfy the statutory requirement that a notice identify "the consumer reporting agency [providing the notice], together with the name and address of the person to whom such information is being reported." 15 U.S.C. § 1681k(a)(1). *See* Doc. No. 71 at p.2.[11]

Plaintiff's views concerning the meaning of "at the time" have changed somewhat over the course of the litigation. Initially, he alleged that Equifax violated Section 1681k when it did not mail the notices "on the day they furnished any part of the report" to OPM. *See* Complaint, Doc. No. 1 at ¶ 24. He later alleged in his Amended Complaint that Equifax violated Section 1681k because it did not mail the notices "at the same time." Doc. No. 64 at ¶ 22. He has since disclaimed that Section 1681k requires that a consumer report be sent to the consumer "at the exact moment" that it is sent to OPM; and currently appears to have adopted the view that in order to be compliant with §1681k(a)(1), Equifax was required to send the notice letter "together with" or "in the same process" as the consumer report to OPM. *See* Doc. No. 71 at p. 4-5; Doc. No. 108 at p. 22. He essentially contends that Equifax was required to have a system of notification that allowed it to actually send to the affected consumer the required notice before or at the same time the consumer report is sent to OPM, not afterwards, essentially the system that Equifax currently has in place. Based on the record before the Court, the Court concludes that

---

[11] Plaintiff testified in his deposition that Equifax "never sent [him] the notification letter." Rodriguez Dep. Tr. at 97:16-22. However, there is no dispute that any notice Plaintiff would have received would have identified Equifax and OPM as reflected in Exhibit 1 to the Amended Complaint, Doc. No. 64-1. *See also* Exhibit 3 to Plaintiff's Motion for Class Certification, Doc. No. 71-3.

8

Plaintiff has failed to present evidence sufficient to establish either that Equifax violated Section 1681k between September, 2012 and May, 2013 or that any such violation was willful.

The requirement that Equifax provide notice "at the time" that it delivers the consumer report to OPM is ambiguous, that is, there is more than one reasonable interpretation of what that requirement means, as evidenced by Plaintiff's own shifting positions. Given that ambiguity, the system established by Equifax was consistent with a reasonable interpretation of that requirement. Under the system of notification then in place, a notice to a consumer was triggered and created internally at the same time a report to OPM was generated internally. That notice was then actually printed and mailed to the consumer as part of a continuous process that was designed to be completed on the same day as OPM received the consumer report. Congress did not impose a "same time" requirement with respect to the receipt of notice; and in 2000, the Federal Trade Commission interpreted the "at the time" requirement to permit the mailing of § 1681k(a)(1) notices. Doc. No. 81 at p. 15, n.3 and Doc. No. 108 at p. 23. Plaintiff contends that Equifax's decision to automate its delivery system to OPM required it to similarly update and automate its notice process to consumers. But the Court cannot conclude that the text of the statute requires such technological symmetry during periods of technological innovation so long as the system initiated, at the same time a report to OPM was initiated, a process that was designed to deliver notice to the consumer according to a reasonable, standard and accepted method of delivery.

Plaintiff claims that Equifax's system of notification is so flawed that he "has affirmatively discovered from Equifax that, in fact, it has no procedure to actually get these notices from computer to the U.S. Postal Service on the same day of the report." Doc. No. 97 at p.6. The Court finds no evidence in the record sufficient to support that contention. Equifax's

system has been described in detail. Michelle Ambrose, the Equifax employee responsible for printing the notices, testified that her schedule followed "the same repetitious thing every day," beginning at 7:00 am, and "immediately, the first thing I do is download . . . the PR letters," and "print them out on the printer and [] take out the envelopes and [] fold them and put them in the envelope, and [] put them in a box and then [] stick them in the mail drop," which was located approximately "5 or 6 cubicles ahead of" hers. Ambrose Dep. Tr. at 14:24-25; 15:1-4; 16:14-19. Jutta Rivera, Equifax Project Manager who managed Equifax's relationship with OPM, testified that during the relevant time period "we do have procedures that we have documented in the OPM manual processing[12] that we adhere to every day." Rivera Dep. Tr. at 70: 20-22. This uncontroverted testimony establishes as a matter of law that during the time period relevant to this litigation, namely, from September 2012 to May 2013, Equifax had a policy and seamless practice beginning with the automated generation of the report and PR files from midnight to 3:00-4:00 a.m., *see id.* at 52: 1-5, printing the notices beginning at approximately 7:00 a.m., and sending them out by U.S. mail that same business day. Plaintiff argues that Equifax has not established that its mailing vendor, in fact, mailed the notices on the same business day the report was delivered to OPM, but the record contains uncontroverted evidence that the system was designed for that purpose, Equifax contracted for that service and the vendor, in fact, as a matter of routine, picked up notices daily; and Plaintiff has presented no evidence that the mailing vendor did not discharge its contractual duties. Likewise, evidence in the record of isolated

---

[12] Equifax produced a document under seal titled "Instructions for Processing the Daily OPM Public Record Letters." Doc. No. 108-7. Plaintiff challengesthat Equifax's "so-called OPM Manual" evidences its compliance with §1681k(a)(1) because the document "does not provide any information as to . . . *when* the subject 'PR letter file' was generated or . . . whether or not the PR letters printed on any given day correspond to *the exact same* consumer reports that Equifax furnished to an employer on that same day." *See* Doc. No. 119 at p. 2-3.

instances when a notice was not mailed on the same business day does not establish that Equifax violated Section 1681k by virtue of the overall system used to provide notice.

With respect to the content of the notice letters sent between September 2012 and May 2013, the Court concludes that the record is insufficient as a matter of law to establish that the letters sent during the class period did not satisfy the criteria of § 1681k(a)(1). The notice identified the sender as Equifax, with an address at Equifax-Maildrop J42-H, P.O. Box 74006 in Alpharetta, Georgia, listed "OPM (Office of Personnel Management)" as the entity receiving the information, together with a city, state and zipcode for OPM, as well as the sources of the information provided to OPM.

The Court alternatively concludes that the evidence is insufficient as a matter of law to establish that Equifax willfully violated § 1681k(a)(1). "[T]o prove willfulness, [the plaintiff must show] only that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer." *Soutter v. Equifax Info. Servs., LLC, supra*, 2015 WL 1787236, at *2. *See also Hill v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 865, 876-77 (M.D.N.C. 2013) (no willful FCRA violation where plaintiff "presented evidence of numerous mistakes by Equifax"). "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). As discussed above, Equifax had in place a policy and system to send notices on the same business day, and even were that system in violation of Section 1681k, either as to the timeliness or content of the required notice, the evidence is insufficient as a matter of law to establish that Equifax engaged in conduct that constituted a willful violation of Section 1681k,

particularly since its conduct does not reflect a conscious or reckless disregard of an obvious and unjustifiably high risk of harm the statute was intended to protect against.

### B. Section 1681e(b)

Plaintiff's individual claim is that Equifax violated § 1681e(b) because the consumer report it furnished to OPM contained an objectively determinable inapplicable civil judgment, viz., a judgment against a person with a different name, and a collection amount that had been discharged in bankruptcy. "[A] consumer reporting agency violates § 1681e(b) if (1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton, supra*, 257 F.3d at 415. Plaintiff seeks actual damages for Equifax's alleged violation of § 1681e(b), and in the alternative, statutory and punitive damages. Am. Cmpl. at ¶¶ 41-42. In order to recover actual damages, Plaintiff must establish at least a negligent violation of Section 1681e(b); and in order to recover statutory or punitive damages, a willful violation. *Compare* 15 U.S.C.A. § 1681n(a)(1)(A) *with* § 1681o(a)(1).

The Court concludes that there is insufficient evidence in the record for a reasonable factfinder to find that Plaintiff suffered any cognizable actual damages or that Equifax enagegd in either a negligent or willful violation of Section 1681e(b). According to his own deposition testimony, he did not incur any economic damages by the report or his failure to receive notice of the report. Rodriguez Dep. Tr. at 100:3-24. He obtained the security clearance and the desired job, *Id.* at 21:10-19; his 2009 bankruptcy was accurately reported and he knew that the bankruptcy would affect his ability to apply for credit. *Id.* at 58:12-24; 124:14-18; 138:5-9. He experienced emotional distress but self treated with over the counter medications and did not obtain any treatment from any health care provider. *Id.* at 131:19-132:22; 112:25-113:4. He also

12

attributed some of that distress to matters other than the Equifax report to OPM, including "a lot of frustration at home" and an "on-going argument" with his brother, *Id.* at 112:13-24; and he could not specifically attribute "the times when [he] took [] over-the-counter medications" specifically to Equifax's conduct, as opposed to conduct attributable to the other CRAs. *Id.* at 132:17-22. *Cf. Sloane v. Equifax, supra,* 510 F.3d at 503 (plaintiff "offered considerable objective verification of her emotional distress, chronic anxiety, and frustration during the twenty-one months that she attempted to correct Equifax's errors" including "sufficiently articulated descriptions of her protracted anxiety through detailed testimony of specific events and the humiliation and anger she experienced as a result of each occurrence").

Alternatively, even if Plaintiff could establish that he suffered a cognizable injury, the record is wholly insufficient to establish that Equifax's violation of § 1681e(b) was willful or negligent when it included in Plaintiff's report to OPM the civil judgment, obtained from Experian's database, or the collection account, obtained from Trans Union's database. *See* OPM Report, under seal Doc. No. 87-11, at p. 5, 19. *See Jianqing Wu v. Trans Union,* 2006 WL 4729755 at *7 (D. Md. May 2, 2006), *aff'd,* 219 F. App'x 320 (4th Cir. 2007) ("To make Equifax liable under the FCRA for relying on the records of businesses, which Equifax has identified as trustworthy, would vitiate one of the purposes of the FCRA, to facilitate commerce. Under the system Plaintiff proposes, the economic costs of investigation would render it economically infeasible for CRAs to function. Nothing in the FCRA or its implementing regulations evinces the intent to place such heavy burdens on CRAs."); *Smith v. Auto Mashers, Inc.,* 85 F. Supp. 2d 638, 641 (W.D. Va. 2000) ("Absent some prior indication that the information is inaccurate, it is reasonable and cost efficient to report information without independent verification.") (citing *Henson v. CSC Credit Servs.,* 29 F.3d 280, 285 (7th Cir.1994)).

## IV. CONCLUSION

For the above reasons, the Court finds and concludes that there is insufficient evidence in the record for a reasonable factfinder to conclude that Equifax violated either Section 1681k or 1681e(b), or alternatively, that any violation of Section 1681k was "willful" or that any violation of Section 1681e(b) was either negligent or willful. Defendant is therefore entitled to judgment as a matter of law as to Plaintiff's claims. Accordingly, Defendant's motion for summary judgment will be GRANTED; and Plaintiff's motion for class certification will be DENIED.

An appropriate Order will issue.

Anthony J. Trenga
United States District Judge

July 17, 2015
Alexandria, Virginia

14